UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HICKS, an Individual on behalf of herself and all others similarly situated and the general public,<br><br>                                    Plaintiff,<br><br>v.<br><br>GRIMMWAY ENTERPRISES, INC., a Corporation with Headquarters in California; and DOES 1–100, inclusive,<br><br>                                    Defendants. | Case No.:  22-CV-2038 JLS (DDL)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE OPERATIVE COMPLAINT; (2) DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT; AND (3) DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY**<br><br>(ECF Nos. 7, 8-1, 9) |

      Presently before the Court are Plaintiff Elizabeth Hick's Motion for Leave to Amend the Operative Complaint ("Mot. to Amend," ECF No. 9), Motion to Remand to State Court ("Remand Mot.," ECF No. 7), and Motion for Jurisdictional Discovery ("Discovery Mot.," ECF No. 8-1).  Defendant Grimmway Enterprises, Inc. filed responses in opposition to each of Plaintiff's motions ("Amend Opp'n," ECF No. 18; "Remand Opp'n," ECF No. 16; "Discovery Opp'n," ECF No. 17).  Plaintiff filed replies in support of the motions ("Amend

1

Reply," ECF No. 20; "Remand Reply," ECF No. 19; "Discovery Reply," ECF No. 21). Having carefully considered the Parties' briefing and the law, the Court **DENIES** Plaintiff's Motion for Leave to Amend the Operative Complaint, **DENIES** Plaintiff's Motion to Remand to State Court, and **DENIES** Plaintiff's Motion for Jurisdictional Discovery.

## BACKGROUND

In this putative class action, Plaintiff alleges that Defendant, a California agricultural corporation, misrepresented the environmental impact of its farming practices through its advertising and "Inaugural Report on Environmental, Social and Governance Actions" ("ESG Report").  *See* First Amended Complaint ("FAC," ECF No. 1-8) ¶¶ 1–4, 19–26. Specifically, Plaintiff alleges that Defendant's statements about "regenerative farming," its Environmental, Social, and Governance ("ESG") commitments, and "preserving natural resources" were "false, deceptive, and misleading."  *Id.* ¶¶ 15–16.  According to Plaintiff, Defendant's "method of growing its goods is causing severe harm to the ecosystem, and to its neighbors and communities."  *Id.* ¶ 3.

Plaintiff purports to represent a class of consumers who "would not have purchased (or would not have paid a premium)" for Defendant's products had they known of Defendant's allegedly misleading statements.  *Id.* ¶ 16.  The FAC asserts three causes of action: (1) false advertising in violation of California Business & Professions Code §§ 17500 *et seq.*, FAC ¶¶ 43–48; (2) "unlawful, unfair, or fraudulent" business practices in violation of California Business & Professions Code §§ 17200 *et seq.*, FAC ¶¶ 49–60; and (3) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, FAC ¶¶ 61–69.

Plaintiff initiated this putative class action by filing a complaint in the Superior Court of San Diego County on September 29, 2022.  ECF No. 1-3.[1]  Plaintiff filed the FAC in

---

[1] Defendant submitted two requests for judicial notice asking this Court to take judicial notice of Plaintiff's initial state court complaint.  *See* ECF Nos. 16-2, 18-1.  This document has already been submitted as an exhibit to Defendant's Notice of Removal.  Therefore, the Court need not take judicial notice of it.  *See*

1   Superior Court on November 22, 2022.  *See* FAC.  Defendant removed the case to this
2   Court on December 22, 2022.  *See* Notice of Removal ("Not. of Removal," ECF No. 1).
3   After removal, Defendant filed a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404,
4   *see* ECF No. 2, and a Motion to Strike Pursuant to California Code of Civil Procedure
5   § 425.16, ECF No. 3.  Subsequently, Plaintiff filed the instant motions.  *See* Mot. to
6   Amend; Mot. to Remand; Mot. for Discovery.  On May 1, the Court denied Defendant's
7   Motion to Transfer, finding that transferring the case to the Eastern District would not serve
8   the convenience of the Parties or the interests of justice.  *See* ECF No. 24.

9       This Order solely addresses Plaintiff's Motions for Leave to Amend the Operative
10  Complaint, to Remand to State Court, and for Jurisdictional Discovery.[2]

11          **PLAINTIFF'S MOTION TO AMEND THE OPERATIVE COMPLAINT**

12      The Court will first address Plaintiff's request for leave to amend the FAC.  Plaintiff
13  contends that a grammatical error resulted in an expanded class definition, which
14  Defendant improperly seized upon to remove the case to federal court.  *See* Plaintiff's
15  Memorandum of Points and Authorities in Support of the Motion for Leave to Amend the
16  Operative Complaint ("Amend Mem.," ECF No. 9-1).  Plaintiff wishes to amend the
17  putative class definition to reflect her intention that this case be litigated in state court.  *See*
18  Amend Mem. at 9 ("[A]t all times[, ]Plaintiff . . . intended for this action to remain in
19  California State Court.").[3]

20  / / /
21  / / /
22  / / /

23  _____

24  *Patoc v. Lexington Ins. Co.*, No. 08-01893 RMW (PVT), 2008 WL 3244079, at *1 n.3 (N.D. Cal. Aug. 5,
25  2008) ("Because this complaint is already before the Court as an exhibit to the Notice of Removal, the
    Court does not need to take judicial notice of this complaint."), *aff'd*, 366 F. App'x 795 (9th Cir. 2010).
26  Accordingly, Defendant's requests for judicial notice are **DENIED** as moot.

27  [2] An order on Defendant's Motion to Strike will issue separately in due course.

28  [3] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

## I.      Legal Standard

Generally, "post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006); *see also Doyle v. OneWest Bank, FSB*, 764 F.3d 1097, 1098 (9th Cir. 2014) ("[T]he District Court should have determined the citizenship of the proposed plaintiff class based on [the plaintiff's] complaint 'as of the date the case became removable.'" (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013))); 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff class shall be determined . . . as of the date of the complaint or amended complaint . . . indicating the existence of Federal jurisdiction."). In *Benko v. Quality Loan Service Corporation*, 789 F.3d 1111 (9th Cir. 2015), however, the Ninth Circuit held that "plaintiffs should be permitted to amend a complaint after removal to *clarify* issues pertaining to federal jurisdiction under CAFA." *Id.* at 1117 (emphasis added). The Ninth Circuit explained that when "a defendant removes a case to federal court under CAFA, and the plaintiffs amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate." *Id.* at 1117.

Later, in *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274 (9th Cir. 2017), the Ninth Circuit proscribed limitations on the exception established in *Benko*. In *Broadway Grill*, the plaintiff's original complaint "described the class as 'all California individuals, businesses and other entities who accepted Visa-branded cards in California since January 1, 2004.'" *Id.* at 1276. The plaintiff sought leave to amend the complaint to change the class definition "to include only 'California citizens,' in order to eliminate minimal diversity." *Id.* The district court granted leave to amend and ordered the case remanded to state court. *Id.* On appeal, the Ninth Circuit described the issue as whether "plaintiffs may amend their complaint, after a case has been removed to federal court, to change the definition of the class so as to eliminate minimal diversity and thereby divest the federal

court of jurisdiction." *Id.* at 1275.  The Ninth Circuit answered this question in the negative, concluding that "amendments that 'change[ ] the definition of the class itself,' rather than 'provide an explanation of the allegations[,]' are 'outside the exception recognized in *Benko*.'" *Borgia v. Bird Rides, Inc.*, No. CV189685DMGFFMX, 2019 WL 3814280, at *4 (C.D. Cal. Aug. 13, 2019) (quoting *Broadway Grill, Inc.*, 856 F.3d at 1277–78).

*Broadway Grill* described the exception established in *Benko* as "very narrow," explaining that "*Benko* itself recognized that CAFA 'favors federal jurisdiction' and that only certain 'CAFA-specific issues[]' . . . that were highly unlikely to be addressed in a state court complaint, justified allowing amendments." 856 F.3d at 1275, 1278.  "Congress specifically noted that, under CAFA, if minimal diversity exists at the time of removal, jurisdiction could not be divested, even if the situation changed as a result of a later event, 'whether beyond the plaintiff's control or the result of his volition.'" *Id.* at 1278–79. "*Benko* did not . . . strike a new path to permit plaintiffs to amend their class definition, add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis." *Id.* at 1279.

The amendment in *Benko* was permitted, according to the Ninth Circuit, because it "served only to provide some amplification, for federal jurisdictional purposes, of the nature of plaintiffs' allegations," *id.* at 1277.  Specifically, the amendment in *Benko* provided "'estimates of the percentage of total claims asserted against [the in-state defendant]' in order to show that the in-state defendant was 'significant,' for purposes of [the "local controversy" exception to CAFA under 28 U.S.C.] § 1332(d)(4)." *Broadway Grill, Inc.*, 856 F.3d at 1277 (quoting *Benko*, 789 F.3d at 1117).  The "local controversy" exception requires federal courts to refuse jurisdiction over a putative class action when "at least 1 defendant is a defendant . . . from whom significant relief is sought by members of the plaintiff class," among other requirements.  28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). Accordingly, allowing the plaintiffs in *Benko* to amend the complaint to elaborate on the nature of the claims against the in-state-defendant did not change the definition of the class

to eliminate minimal diversity; rather, the amendments were intended to clarify CAFA-specific issues. *See Broadway Grill, Inc.*, 856 F.3d at 1277–78.

In contrast, the amendment in *Broadway Grill* "changed the definition of the class itself." *Broadway Grill, Inc.*, 856 F.3d at 1277. There, "[i]nstead of being composed of all the merchants in the state of California, regardless of citizenship, the class, as defined in the amended complaint, became exclusively composed of California citizens." *Id.* Such an amendment "attempted to do what CAFA was intended to prevent: an amendment changing the nature of the class to divest the federal court of jurisdiction." *Id.* at 1279. Consequently, the amendment fell outside of *Benko*'s narrow exception. *Id.* at 1277–79.

## II.   Discussion

Here, Plaintiff's FAC describes the proposed class as including "[a]ll persons . . . residing in the state of California, or . . . any out of state resident in the state of California[,] . . . who purchased Grimmway goods/products." FAC ¶ 30. Plaintiff claims that the class definition in the FAC was "intended" to include "any out of state resident **of** the State of California," rather than "any out of state resident in the state of California." Amend Mem. at 8 (emphasis in original). According to Plaintiff, "the definition as currently plead[ed] was a 'rough draft,' and [was] never intended to be included in the final FAC." *Id.* Plaintiff contends that allowing amendment here would permit her to "clarify" the proposed class definition, not impermissibly change it. *Id.* at 5.

Plaintiff presents the Court with two proposed second amended complaints, requesting that "the Court allow the Amendment" that strips the Court of federal jurisdiction under CAFA. *See id.* One proposed complaint describes the class as "[a]ll persons who are *citizens* of the state of California and who purchased Grimmway goods/products," ECF No. 9-3 ¶ 30 (emphasis added), and another describes the class as "[a]ll persons who are *residents* of the state of California and who purchased Grimmway goods/products," ECF No. 9-5 ¶ 30 (emphasis added). The proposed amended complaints also introduce limitations to restrict the class to California citizens. *See* ECF No. 9-3 ¶ 30; ECF No. 9-5 ¶ 30.

Defendant argues that the edits contained within the FAC were not "accidental or 'grammatical errors' as Plaintiff now claims but were, instead, deliberate changes to expand the scope of this litigation." Amend Opp'n at 5. In Defendant's view, the FAC's expanded class definition necessarily includes non-California residents, and, therefore, CAFA's minimal diversity requirement is met. *See* Not. of Removal ¶¶ 11–25. Defendant further contends that "Ninth Circuit authority expressly prohibits post-removal amendment that would divest the federal court of jurisdiction." Amend Opp'n at 5. Finally, Defendant notes that asking the Court to choose between two proposed amended complaints "is akin to improperly asking the Court to provide an advisory opinion." *Id.*

Here, the Court finds that granting leave to amend the complaint to change the proposed class definition is not appropriate, as Plaintiff's amendments impermissibly "alter the essential jurisdictional analysis." *See Broadway Grill*, 856 F.3d at 1279. Before explaining this conclusion, however, the Court would like to address certain deficiencies with the motion filed by Plaintiff's counsel.

First, "Plaintiff is informed that the court does not issue advisory opinions or provide legal advice." *King v. Ashley*, No. 2:14-CV-1306 KJN P, 2014 WL 3689582, at *4 (E.D. Cal. July 23, 2014). Accordingly, the Court will not choose for Plaintiff which of the proposed second amended complaints achieves her desired result. *See Chi. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113–14 (1948) ("This Court early and wisely determined that it would not give advisory opinions even when asked by the Chief Executive. It has also been the firm and unvarying practice of Constitutional Courts to render no judgments not binding and conclusive on the parties and none that are subject to later review or alteration by administrative action." (citing *Hayburn's Case*, 2 Dall. 409 (1792); *United States v. Ferreira*, 13 How. 40 (1852); *Gordon v. United States*, 117 U.S 697 (1864); *In re Sanborn*, 148 U.S. 222 (1893); *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447 (1894); *La Abra Silver Mining Co. v. United States*, 175 U.S. 423 (1899); *Muskrat v. United States*, 219 U.S. 346 (1911); *United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386 (1934))).

Second, Plaintiff's argument that the expanded class definition resulted from a grammatical error is not credible.  The "intended" class definition—"[a]ll persons . . . residing in the state of California, or . . . any out of state resident **of** the state of California[,] . . . who purchased Grimmway goods/products," Amend Mem. at 8 (emphasis in original)—would, under Plaintiff's interpretation, be indistinct from the original class definition of "[a]ll persons residing in the State of California who purchased Grimmway goods/products," ECF No. 1-3 ¶ 30.  Both definitions consist entirely of California residents who purchased Grimmway products, making the "intended" definition redundant and, therefore, unnecessary.  Further undermining Plaintiff's claim of grammatical error is the fact that neither of Plaintiff's proposed second amended complaints include the allegedly "intended" class definition.  *See* ECF No. 9-3 ¶ 30, ECF No. 9-5 ¶ 30.  Clearly, the proper interpretation of Plaintiff's FAC is that the expanded definition of "any out of state resident in the state of California" was purposefully designed to encompass non-California residents who purchased Defendant's products in California.  Regardless of the veracity of Plaintiff's counsel's claims, "[t]he Court cannot credit Plaintiff's subjective intent over the objective disclosures" in the FAC.  *Stern v. RMG Sunset, Inc.*, No. 17-CV-1646 JLS (NLS), 2018 WL 2296787, at *7 (S.D. Cal. May 21, 2018).

Third, Plaintiff's counsel's contention that the "law regarding the propriety of 'resident' to 'citizen' is currently 'in flux,'" Amend Mem. at 5, is simply incorrect.  CAFA unambiguously permits removal where "any member of a class of plaintiffs is a *citizen* of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A) (emphasis added).  Moreover, there is ample case law discussing the difference between a "resident" and a "citizen" for purposes of diversity of citizenship in federal cases.  As the Ninth Circuit has explained:

> To be a citizen of a state, a natural person must first be a citizen of the United States.  The natural person's state citizenship is then determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends

1
2

> to return.  A person residing in a given state is not necessarily
> domiciled there, and thus is not necessarily a citizen of that state.

3
4
5
6
7
8
9
10
11

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (internal citations omitted)).  In fact, Plaintiff's counsel cites one of this Court's decisions discussing this very issue.  Amend Mem. at 5, 11, 14–15.  In *Weight v. Active Network, Inc.*, 29 F. Supp. 3d 1289, 1293 (S.D. Cal. 2014), this Court explained that "under federal law, 'resident of' is not equivalent to 'domiciled in'—and, therefore, also not equivalent to 'citizen of.'" How Plaintiff's counsel arrived at the conclusion that the difference between "resident" and "citizen" for purposes of diversity of citizenship is "in flux" (a phrase not present in any of the cases cited by Plaintiff's counsel) upon reviewing the cited cases is unclear to the Court.

12
13
14
15
16
17
18
19

These discrepancies aside, allowing Plaintiff to amend the complaint with the express purpose of revising the proposed class definition to eliminate federal jurisdiction, *see* Amend Mem. at 9 ("[A]t all times[, ]Plaintiff had intended for this action to remain in California State Court."), would sanction conduct expressly prohibited in *Broadway Grill*, *see Dada v. CyberCoders, Inc.*, No. SACV1801023JVSJDEX, 2018 WL 6133673, at *3 (C.D. Cal. July 16, 2018) ("The Ninth Circuit explicitly rejected this tactic stating that plaintiffs may not make changes to class definitions, add or remove defendants, or add or remove claims in an attempt to eliminate diversity.").

20
21
22
23
24
25
26
27
28

"Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant." *Broadway Grill, Inc.*, 856 F.3d at 1276 (citing 28 U.S.C. § 1332(d)(2)(A)).  Here, the class description in Plaintiff's FAC contains no limiting provision as to the citizenship of the class members. *See* FAC ¶ 30.  Consequently, minimal diversity exists between the proposed class, which necessarily encompasses citizens of any state, and Defendant, who is a citizen of Delaware and California.  *See Broadway Grill*, 856 F.3d at 1278 (noting that the original class in *Hargett v. RevClaims, LLC*, 854 F.3d 962, 966 (8th Cir. 2017), of Arkansas "residents" included non-citizens and therefore satisfied minimal diversity); *Stern*, 2018 WL 2296787,

9

at *7 ("Plaintiff's motion clearly meets the minimal diversity standard because it contains no limiting provision as to citizenship in the class.").  Plaintiff's proposed amendments, on the other hand, explicitly exclude any non-California citizens.  *See* ECF No. 9-3 ¶ 30; ECF No. 9-5 ¶ 30.  Such an amendment would obviously change the jurisdictional analysis, as it would eliminate minimal diversity.  Moreover, Plaintiff makes no argument that the proposed amendment is a clarification of CAFA-specific issues, such that it would fall under the exception recognized in *Benko* and *Broadway Grill*.  *See generally* Amend Mem. Consequently, this Court, pursuant to *Broadway Grill*, cannot allow Plaintiff to amend the proposed class definition.

In support of her argument, Plaintiff cites various cases that were issued before the Ninth Circuit's decision in *Broadway Grill*.  For example, Plaintiff cites this Court's decision in *Weight v. Active Network, Inc.*, 29 F. Supp. 3d 1289, 1293 (S.D. Cal. 2014). There, this Court permitted the plaintiff to narrow the original class of California "residents" to California "citizens."  *Id.*  This Court concluded that the amended complaint "merely clarifie[d] that [the plaintiff's] original intent was to litigate on behalf of California citizens only."  *Id.*  While this Court's decision in *Weight* was arguably in accord with Ninth Circuit precedent at the time it was issued, the Ninth Circuit's decision in *Broadway Grill* "directly rejects the result this Court reached . . . , effectively overruling . . . *Weight*." *Richards v. Now, LLC*, No. 218CV10152SVWMRW, 2019 WL 2026895, at *3 (C.D. Cal. May 8, 2019).  All other pre-*Broadway Grill* cases cited by Plaintiff are unpersuasive for similar reasons.

"Indeed, following the Ninth Circuit's decision in *Broadway Grill*, district courts are in accord that a plaintiff may not amend a complaint to clarify that the class definition was intended to apply to citizens of a state, not residents."  *Id.* at *4; *see also Kosieradzki v. Eversource Serv. Energy Co.*, No. 3:20-CV-01338 (VLB), 2021 WL 1227571, at *8 (D. Conn. Apr. 1, 2021) (denying motion to amend under *Broadway Grill* where plaintiffs' amendment would limit the class description to "citizens of Connecticut instead of residents of Connecticut" (internal quotations omitted)); *Dada*, 2018 WL 6133673, at *4

1    (denying motion to remand where, post-removal, plaintiffs' second amended complaint
2    "introduced a citizenship limitation" and removed diverse parties from the action).  In fact,
3    in *Stern v. RMG Sunset, Inc.*, this Court rejected the plaintiff's post-removal attempt to
4    limit the proposed class definition to "California citizens" instead of "[a]ll persons."  2018
5    WL 2296787, at *7.  This Court found that "[t]his sort of post-removal amendment to
6    remove CAFA jurisdiction is exactly the behavior prohibited under *Broadway Grill*."  *Id.*

7         Notably, the Ninth Circuit in *Broadway Grill* discussed two decisions from other
8    circuit courts concluding that post-removal amendment may not affect the existence of
9    federal jurisdiction.  First, the Ninth Circuit "agree[d]" with the Eighth Circuit's decision
10   in *Hargett v. RevClaims, LLC*, 854 F.3d 962 (8th Cir. 2017), to "refuse[] to consider a post-
11   removal amendment that would have narrowed the original class of Arkansas 'residents'
12   to Arkansas 'citizens.'"  The Eighth Circuit noted that "CAFA's language demands that
13   class citizenship 'must be determined as of the date of the pleading giving federal
14   jurisdiction,'" meaning the "the class included non-citizens and hence minimal diversity
15   was satisfied."  *Broadway Grill, Inc.*, 856 F.3d at 1278 (quoting *Hargett*, 854 F.3d at 967).
16   Second, the Ninth Circuit approved of the Tenth Circuit's conclusion in *Reece v. AES*
17   *Corp.*, 638 F. App'x 755, 775 (10th Cir. 2016), that CAFA precluded the plaintiffs' ability
18   to amend the class to "cover only Oklahoma citizens" instead of "Oklahoma residents."
19   *Id.*

20        Plaintiff cites to two post-*Broadway Grill* decisions that allowed post-removal
21   amendment, but both cases fail to persuade the Court that amendment is proper here.  In
22   *Borgia v. Bird Rides, Inc.*, No. CV189685DMGFFMX, 2019 WL 3814280, at *3 (C.D.
23   Cal. Aug. 13, 2019), the court allowed a post-removal amendment limiting the proposed
24   class to "California citizens," instead of "[a]ll individuals."  There, however, the
25   amendment was not intended to eliminate minimal diversity, as minimal diversity would
26   have existed regardless of the proposed amendment as one of the defendants was not a
27   citizen of California.  *Id.*  Instead, the plaintiffs' proposed amendment was intended to
28   "explain that their proposed classes' definitions include only California citizens, such that

the Court can determine how to apply the local controversy exception despite the undisputed existence of minimal diversity." *Id.*  Here, in contrast, Plaintiff's proposed amendment is designed to eliminate the existence of minimal diversity, not to provide more information to the Court pertaining to CAFA-specific issues, like the local controversy exception.

Second, *Soto v. Future Motion, Inc.*, No. 20-CV-06982-SVK, 2021 WL 1222623 (N.D. Cal. Mar. 31, 2021), is a non-binding opinion that relies on pre-*Broadway Grill* authority in support of its decision to permit a post-removal amendment that narrowed the proposed class from "all persons" to persons "currently domiciled in California." *Id.* at *4 (citing *Labrado v. Method Prod., PBC*, No. 16-CV-05905-LB, 2016 WL 6947337 (N.D. Cal. Nov. 28, 2016)).   That decision also permitted amendment because the original complaint "d[id] not contain facts from which it c[ould] be determined whether exceptions to CAFA jurisdiction applies." *Id.*  This conclusion suffers from a misinterpretation of the *Benko* exception.   *Broadway Grill* held that *Benko* permitted post-removal amendment where the amendment did not change the class definition, but merely amplified allegations pertaining to CAFA-specific issues. *Supra* pp. 3–5.  Contrary to the court's implication in *Soto*, *Benko* does not stand for the proposition that diversity-destroying, post-removal amendments to class definitions are permitted where the original complaint lacks CAFA-specific information.  After all, the same was true for the complaint in *Broadway Grill*.   *See Broadway Grill, Inc.*, 856 F.3d at 1275–76 (noting district court denied motion to remand because original class definition, "on its face," did not establish that two-thirds of the class members were California citizens for purposes of the local controversy exception).  For these reasons, this Court finds *Soto* unpersuasive.

In sum, Plaintiff's proposed amendments are intended to eliminate minimal diversity, thereby stripping this Court of federal jurisdiction.  Such an amendment is explicitly prohibited by Ninth Circuit precedent.

/ / /

/ / /

12

**III.   Conclusion**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Amend the Operative Complaint (ECF No. 9).

**PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

**I.   CAFA's Jurisdictional Requirements**

**A.   *Legal Standard***

CAFA "provides federal district courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and at least $5 million in controversy." *Richards*, No. 218CV10152SVWMRW, 2019 WL 2026895, at *1 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  When a plaintiff seeks to remand a class action to state court, the defendant "bears the evidentiary burden of establishing federal jurisdiction under CAFA by a preponderance of the evidence."  *Id.*; *see also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013) ("The party seeking the federal forum [in CAFA cases] bears the burden of establishing that the statutory requirements of federal jurisdiction have been met.").  While courts generally "strictly construe the removal statute against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89.

**B.   *Discussion***

Plaintiff argues that Defendant has failed to meet its burden of showing that removal of this case was proper.  Specifically, Plaintiff argues that Defendant "has failed to establish **(1)** minimal diversity (due to the grammatical errors [in the FAC]), and **(2)** that the amount in controversy exceeds $5 million."  Plaintiff's Memorandum of Points and Authorities in Support of the Motion to Remand to State Court ("Remand Mem.," ECF No. 7-1) at 15 (emphasis in original).  Defendant counters that "the amount in controversy . . . readily exceeds $5 million and Plaintiff's proposed class, as described in the [FAC], expressly includes individuals who are not citizens of California."  Remand Opp'n at 8.

/ / /

13

1    As the Court has already concluded that Plaintiff's claims of grammatical error in

2    the FAC are not credible and denied Plaintiff's Motion to Amend the Operative Complaint,

3    the Court **DENIES** Plaintiff's Motion to Remand to the extent it is based on such

4    arguments.  In accordance with Ninth Circuit precedent, the Court treats the FAC as the

5    operative complaint and will analyze Plaintiff's Motion to Remand on the basis of the

6    allegations contained in the FAC, the Parties' briefing, and the evidence submitted in

7    support of the Parties' arguments.  *See Broadway Grill, Inc.*, 856 F.3d 1274; *Richards*,

8    2019 WL 2026895, at *3 ("Because the [Second Amended Consolidated Complaint]

9    merely changes the definition of the class and fails to provide additional CAFA-specific

10   information, the motion to remand must be assessed based on the allegations as set forth in

11   the [First Amended Consolidated Complaint], the operative complaint at the time of

12   Defendants' removal to federal court.").

13   There is no dispute between the Parties that the putative class includes more than

14   100 members.  *See* Remand Mem.; Remand Opp'n.  Accordingly, the Court will turn to

15   the two remaining requirements for federal jurisdiction under CAFA: minimal diversity

16   and at least $5 million in controversy.

17               *1.   Minimal Diversity*

18   Minimal diversity exists in CAFA cases where "any member of a class of plaintiffs

19   is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  "A class

20   member's state of citizenship is determined by domicile, which requires more than simply

21   maintaining a residential address in a given state."  *Richards*, 2019 WL 2026895, at *2.

22   The Court finds that Defendant has met its burden of showing that there is minimal

23   diversity between the Parties.  As discussed above, the FAC's class description includes

24   "[a]ll persons . . . residing in the state of California, or . . . any out of state resident in the

25   state of California[,] . . . who purchased Grimmway goods/products."  FAC ¶ 30.  Because

26   the proposed class contains no limiting provision as to the class members' citizenship, the

27   class, on its face, necessarily includes any non-California, non-Delaware citizen who

28   purchased Defendant's products and resided in California during the relevant period.  *See*

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."); *Broadway Grill*, 856 F.3d at 1278; *Stern*, 2018 WL 2296787, at *7; *McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158, 163 (D. Mass. 2007) ("[T]his putative class that is composed entirely of residents of Massachusetts, does not, by definition, foreclose the inclusion of non-citizens as well. This suffices to support the assertion of federal jurisdiction in this [CAFA] case."). The Court also notes that a literal reading of the FAC's class description would include California residents who purchased Grimmway products in *any state*, not just California, during the relevant period, making it considerably more likely that minimal diversity is satisfied here.

Further, Defendant has produced evidence indicating a reasonable probability that the proposed class, which Plaintiff "believes . . . exceeds Twenty-Five Thousand" residents of California alone, FAC ¶ 32(a), includes at least one non-California, non-Delaware citizen who purchased Grimmway products during the relevant timeframe. Defendant claims to be "the world's largest producer of carrots, which it sells internationally and in each of the 50 states." Not. of Removal ¶ 23. Defendant's products are "carried in major retailers including Whole Foods, Smart & Final, Safeway, Ralph's, and Albertsons," and its products "can be found at retailers located near the California state lines at stores frequented by non-residents." *Id.* Defendant has presented evidence that it sold more than $200 million of goods in California during the relevant four-year period. *See* Declaration of Katie Diesl in Support of Defendant Grimmway Enterprises, Inc.'s Opposition to Plaintiff's Motion to Remand ("Diesl Decl. Remand," ECF No. 16-1) ¶ 3.[4]

---

[4] Plaintiff objects to the cited portion of Ms. Diesl's declaration on the basis of lack of foundation, improper opinion, and the best evidence rule. *See* Plaintiff's Objection to the Declaration of Katie Diesl in Support of Defendant Grimmway Enterprises, Inc.'s Opposition to Plaintiff's Motion to Remand (ECF No. 19-2). The Court **OVERRULES** Plaintiff's objections, as they are entirely meritless.

"Personal knowledge may be inferred from declarations that concern areas within the declarant's job responsibilities." *Silva v. AvalonBay Communities, Inc.*, No. LACV1504157JAKPLAX, 2015 WL 11422302, at *4 n.1 (C.D. Cal. Oct. 8, 2015). Ms. Diesl is Defendant's Chief Information Officer, and

The contention that not one of those products was purchased by a non-California, non-Delaware citizen is simply beyond belief.  *King v. Safeway, Inc.*, No. C-08-0999 MMC, 2008 WL 1808545, at *1 (N.D. Cal. Apr. 22, 2008) (concluding defendant met burden of showing minimal diversity where class consisted of "[a]ll persons in the State of California who purchased organic milk or milk products from [defendant]," and defendant "ha[d] many stores in California which are close to, or encroach upon, the borders of other states" (internal quotations omitted)); *McMorris*, 493 F. Supp. 2d at 164 (finding "reasonable probability" that class of "residents of Massachusetts" included at least one member "domiciled in a state other than Massachusetts or Delaware, the two states in which [defendant was] domiciled"); *Larsen v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:06-CV-0077-JAJ, 2007 WL 3341698, at *5 (S.D. Iowa Nov. 9, 2007) (finding it was "almost certain"

/ / /

---

"part of [her] job responsibilities includes querying information, including sales and shipment information." Diesl Decl. Remand ¶ 2. Ms. Diesl avers that she "queried and reviewed sales and shipment information, including information relating to sales and shipments in California on numerous occasions as part of [her] job, and . . . queried and reviewed information relating to Grimmway's sales in California specifically in preparation of her declaration. *Id.* Such a showing is sufficient for the Court to infer that Ms. Diesl possesses relevant personal knowledge of Defendant's sales figures.

Concerning the "best evidence rule," Federal Rule of Evidence 1002 provides that: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."  "[T]he best evidence rule 'requires not, as its common name implies, the best evidence in every case but rather the production of an original document instead of a copy.'"  *United States v. Diaz-Lopez*, 625 F.3d 1198, 1201 (9th Cir. 2010) (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir. 1986)).  This rule is irrelevant to Ms. Diesl's declaration.  Moreover, affidavits and declarations are appropriate forms of evidence for defendants to meet their burden of showing a federal court's jurisdiction under CAFA.  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Finally, Federal Rule of Evidence 701 limits non-expert witnesses to opinion testimony that (1) is based on their own perception, (2) is helpful to understanding the witness's testimony or determining a fact in issue, and (3) is not based on scientific or specialized knowledge.  Ms. Diesl's declarations regarding Defendant's sales in California over the relevant period are factual in nature, not opinions.  Consequently, this rule is irrelevant to Ms. Diesl's declaration.

To the extent the Court does not rely on evidence to which an evidentiary objection was raised, the Court **OVERRULES** the objections as moot.

that class of "all persons and entities in the state of Iowa" who purchased defendant's products included at least one out-of-state citizen).

In sum, the Court finds that Defendant has met its burden of showing that minimal diversity exists between the parties.

### 2.    *Amount in Controversy*

As noted above, "federal jurisdiction under CAFA exists for class actions in which the amount in controversy exceeds $5,000,000, assessed by reviewing the claims of all individual class members in the aggregate." *Richards*, 2019 WL 2026895, at *5.  "[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

"To determine the amount in controversy, we 'first look to the complaint.'" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771 (9th Cir. 2020) (quoting *Ibarra*, 775 F.3d at 1197).  When a plaintiff contests the amount in controversy allegation, and the complaint is silent as to damages, "'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)); *see also Ibarra*, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

"The preponderance of the evidence standard, in practical terms, requires the defendant to provide persuasive evidence that 'the potential damages *could* exceed the jurisdictional amount,' as opposed to requiring 'a prospective assessment of defendant's liability' to any degree of certainty." *Richards*, 2019 WL 2026895, at *5 (internal citations omitted) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)

(emphasis added)).   "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.   In short, "[t]o meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene*, 965 F.3d at 772.

Plaintiff argues that "[Defendant] fails to cite ***any*** evidence (including declaration testimony) to establish" that $5 million is in controversy in this case.   Remand Mem. at 19 (emphasis in original).   As discussed above, however, Defendant's evidentiary burden only arose upon Plaintiff's challenge to the amount-in-controversy requirement.   *See Jauregui*, 28 F.4th at 992.   The FAC is silent as to the amount in controversy, *see* FAC, and Defendant's notice of removal provided plausible allegations that more than $5 million was at stake in this litigation, *see* Not. of Removal ¶¶ 16–19.

Following the challenge raised in Plaintiff's Motion to Remand, Defendant submitted a declaration from Ms. Diesl, whose responsibilities include querying and reviewing sales figures for Defendant, stating that "the sales of Grimmway products in the State of California over the alleged 4-year class period . . . exceed the $5 million jurisdictional minimum by factor of ten or more each year of the four-year period."   Diesl Decl. Remand ¶ 3.   In other words, Defendant has submitted credible evidence that Defendant sold more than $200 million of goods in California during the relevant timeframe.   Consequently, if Plaintiff's claims involve only 2.5 percent of Defendant's sales in California alone over the relevant timeframe, then CAFA's amount-in-controversy requirement will have been met.   There is good reason to believe that is the case here.

Plaintiff's putative class includes all California residents who purchased Defendant's products, as well as all out of state residents who purchased Defendant's products in California, over a four-year period.   *See* FAC ¶ 30.   Without further belaboring the point, this class definition captures a nationwide class of customers who purchased Defendant's products across the country.   *Supra* pp. 15–17.   Plaintiff claims the class

contains at least 25,000 California-based members (which does not account for the non-California citizen members) and that "thousands to hundreds of thousands of units of . . . Grimmway Products have been sold in the state of California" during the relevant period. FAC ¶¶ 30–31. Plaintiff requests "disgorgement of all profits and/or restoration of monies wrongfully obtained through the Defendants' pattern of unfair and deceptive business practices." *Id.* ¶ 28. The wrongful acts alleged here include false advertising and unfair business practices that are "continuing in nature and . . . widespread." *Id.* ¶¶ 43–69. The Court cannot presently quantify the share of Defendant's sales affected by its advertising efforts or its ESG report. Assuming, however, that the allegedly misleading messages are as "widespread" as Plaintiff claims, the Court is confident that the share of affected sales is significantly higher than 2.5 percent of Defendant's total sales. Consequently, it is reasonably possible that the amount in controversy exceeds $5 million.

Any remaining doubts regarding the $5 million requirement are resolved by Plaintiff's additional requests for punitive damages and attorneys' fees in this case. *See* FAC at Prayer for Relief(f), (j). First, "a defendant that relies on potential punitive damages to satisfy the amount in controversy under CAFA meets that requirement if it shows that the proffered punitive/compensatory damages ratio is reasonably possible." *Greene*, 965 F.3d at 773. "[O]ne way to establish that possibility is to cite a case involving the same or a similar statute in which punitive damages were awarded based on the same or higher ratio." *Id.* Here, Defendant cites *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 530 (S.D. Cal. 2020), for the proposition that "courts 'generally apply a 1 to 1 ratio for punitive damages in calculating the amount in controversy in consumer class actions.'" Remand Opp'n at 10. *Hawkins*, in turn, supported this proposition by collecting several CAFA cases where a 1:1 ratio was used, including at least one case involving causes of action identical to Plaintiff's. *See Hawkins*, 337 F.R.D. at 530 (citing *Sloan v. 1st Am. Auto. Sales Training*, Case No. 2:16-cv-05341-ODW (SK), 2017 WL 1395479, at *3 (C.D. Cal. Apr. 17, 2017) (alleging violation of California's False Advertising Law, Unfair Competition Law, and the Consumer Legal Remedies Act)). *Hawkins* itself involved causes of action identical to

Plaintiff's and ultimately concluded that "an award of punitive damages equal to or greater than" the restitution damages sought by the plaintiff "should be included in the amount in controversy." *Id.* at 532. Accordingly, the Court finds that Defendant has demonstrated a reasonable probability of a 1:1 award of punitive damages, such that punitive damages should be included in the amount-in-controversy calculation.

Second, in CAFA cases, "a court must include future attorneys' fees recoverable by statute . . . when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). "The [Consumer Legal Remedies Act] authorizes an award of attorneys' fees to a prevailing plaintiff." *Hawkins*, 337 F.R.D. at 532 (citing Cal. Civ. Code § 1780(e)). "[C]ourts have used a 25% multiplier to calculate attorneys' fees." *Id.* Accordingly, the Court also accounts for a 25 percent multiplier for attorneys' fees in calculating the amount-in-controversy.

Even if the Court assumes an extremely conservative damages award of 1 percent of Defendant's California sales over the relevant period, CAFA's amount-in-controversy requirement is satisfied. According to Ms. Diesl's declaration, Defendant's sales in California exceeded $200 million over the relevant period. The Court will assume total California sales equated $200,000,001.00. One percent of $200,000,001.00 is $2,000,000.01. Assuming a 1:1 ratio of punitive damages to compensatory damages, $4,000,000.02 would be at stake. Adding 25 percent for attorneys' fees brings the total to $5,000,000.03. *See Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1238 (C.D. Cal. 2019) (concluding attorneys' fees of 25 percent of "aggregate damages" was appropriately included in amount-in-controversy calculation); *see also Hawkins*, 337 F.R.D. at 532 (calculating attorneys' fees based on total damages award, including restitution and punitive damages).

Plaintiff has not submitted any contrary evidence regarding the amount in controversy. *See* Mot. to Remand. Accordingly, the Court is satisfied that Defendant has / / /

met its burden of showing by a preponderance of the evidence that more than $5 million is at stake in this case.

## II.    Exceptions to CAFA Jurisdiction

### *A.    Legal Standard*

There are two exceptions to the district court's ability to exercise federal jurisdiction over cases meeting CAFA's removal requirements: (1) the "home-state controversy," and (2) "local controversy" exceptions.  If the requirements for either of these exceptions are met, a "district court shall decline to exercise jurisdiction" over the class action.  28 U.S.C. § 1332 (d)(4).

The "home-state controversy" exception applies where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B). Additionally, under the "discretionary home-state exception," a district court has discretion to remand a case to state court when "more than *one-third* of the putative class, and the primary defendants, are citizens of the state where the action was originally filed."  *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (citing 28 U.S.C. § 1332(d)(3)) (emphasis in original).  "CAFA enunciates six factors for a district court to consider in deciding whether to decline jurisdiction under this discretionary home state exception."  *Id.* (citing 28 U.S.C. § 1332(d)(3)(A)–(F)).

The "local controversy" exception applies when:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

1
2

(cc) who is a citizen of the State in which the action was originally filed; and

3
4

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed . . . .

5
6

28 U.S.C. § 1332(d)(4)(A)(i).

7

"[T]he party seeking remand bears the burden to prove an exception to CAFA's

8

jurisdiction." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). "To

9

meet this burden, the moving party must provide 'some facts in evidence from which the

10

district court may make findings regarding class members' citizenship.'" *Brinkley v.*

11

*Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (quoting *Mondragon v.*

12

*Cap. One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013)). "A district court makes factual

13

findings regarding jurisdiction under a preponderance of the evidence standard."

14

*Mondragon*, 736 F.3d at 884. "Although such a finding must be based on more than mere

15

'guesswork,' [the Ninth Circuit has] repeatedly cautioned that the burden of proof on a

16

plaintiff 'should not be exceptionally difficult to bear.'" *Adams*, 958 F.3d at 1221 (internal

17

citations omitted) (quoting *Mondragon*, 736 F.3d at 884, 886)).

18

### B.   Discussion

19

Plaintiff argues that the home-state and local controversy exceptions apply here, as

20

more than two-thirds of the putative class members are citizens of California. Remand

21

Mem. at 23–26. In support of this argument, Plaintiff presents a declaration from Shelley

22

Lapkoff ("Lapkoff Decl.," ECF No. 7-2). Ms. Lapkoff is a demographer with 30 years of

23

demographic research experience. Lapkoff Decl. at 2. Ms. Lapkoff attests that she was

24

"asked by plaintiff attorneys in this case to render expert opinions concerning whether more

25

than two-thirds of California residents are considered California citizens" and that her

26

declaration is "based on [her] personal knowledge." Lapkoff Decl. at 2. Her "opinions"

27

rely "primarily on the 2020 decennial Census and the Census Bureau's American

28

Community Survey." *Id.* at 4–5. Ultimately, Ms. Lapkoff concludes that it is "extremely

likely that far more than two-thirds of California residents are California citizens." *Id.* at 6.

While the Court has no reason to doubt the accuracy Ms. Lapkoff's findings, they are irrelevant to the present case. Plaintiff's class definition includes California residents and out-of-state residents. Accordingly, Ms. Lapkoff's findings do not account for the citizenship of a large portion of putative class members. Nor are Ms. Lapkoff's findings limited to purchasers of Defendant's products; rather, the survey data on which she relies pertains to all California residents. *See id.* Finally, Ms. Lapkoff's estimates account for "unauthorized immigrants" living in California. *See id.* at 5. As non-U.S. citizens cannot be a citizen of any state, their inclusion in Ms. Lapkoff's analysis irreparably skews her results. *See Kanter*, 265 F.3d at 857 ("To be a citizen of a state, a natural person must first be a citizen of the United States.").

Ms. Lapkoff's "opinions" based on survey data constitute the type of "guesswork" on which courts may not rely in determining whether a CAFA exception applies. *See Adams*, 958 F.3d at 1221; *see also Carlos v. Easter Seals S. California Inc.*, No. SACV1401685JVSRNBX, 2014 WL 12966422, at *6 (C.D. Cal. Dec. 23, 2014) (concluding U.S. Census statistics were "not nearly specific enough to demonstrate that at least two-thirds of the putative class members . . . [were] California citizens" where class was not limited to California citizens). The Court acknowledges that there is a reasonable probability that some of Defendant's products were purchased by California citizens, just as there is a reasonable probability that some of Defendant's products were purchased by non-California, non-Delaware citizens. There is, however, "simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one." *Mondragon*, 736 F.3d at 884.

While the burden on Plaintiff is not "exceptionally difficult to bear," *id.* at 886, Plaintiff has failed to provide addresses, business records, tax documents, mail, or any other evidence of citizenship for a single putative class member. Consequently, Plaintiff has failed to demonstrate by a preponderance of the evidence that either the home-state

controversy or local controversy exceptions are applicable here.  Plaintiff has additionally failed to show that even one-third of the putative class members are California citizens; therefore, the discretionary home-state controversy exception is similarly inapplicable here.

## III.    Conclusion

Defendant has met its burden of showing by a preponderance of the evidence that CAFA's requirements for federal jurisdiction are satisfied.  Plaintiff, on the other hand, has offered no credible evidence that any of the exceptions to federal jurisdiction under CAFA are applicable here.  Therefore, the Court **DENIES** Plaintiff's Motion to Remand to State Court (ECF No. 7).

## PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

## I.    Legal Standard

A district court has "broad discretion to permit or deny [jurisdictional] discovery, . . . and its decision will not be reversed except 'upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'" *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).  "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

"Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Loc. No. 498, United Food & Com. Workers*, 788 F.2d at 540 (quoting *Data Disc, Inc.*, 557 F.2d at 1285 n.1).  "[A] refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Laub*, 342 F.3d at 1093 (9th Cir. 2003) (citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977)).

"The Senate Committee on the Judiciary made clear that jurisdictional discovery under CAFA is to be limited in scope." *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 985 (S.D. Cal. 2005).  The Committee noted:

> [I]n assessing the various criteria established in [CAFA's] new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes.  The Committee further understands that in some instances, limited discovery may be necessary to make these determinations.  However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information.  Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions.

S. REP. NO. 109-14, at 44 (2005).  Likewise, "jurisdictional discovery may not be allowed if the request amounts to a 'fishing expedition.'" *Martindale v. MegaStar Fin. Corp.*, No. 220CV01983MCEDMC, 2022 WL 1129223, at *3 (E.D. Cal. Apr. 15, 2022); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The denial of [plaintiff-appellant's] request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion."); *Angulo v. Providence Health & Servs. Wash.*, No. C22-0915JLR, 2023 WL 2573240, at *6 (W.D. Wash. Mar. 17, 2023) ("Jurisdictional discovery is not permitted . . . where it would amount to a mere 'fishing expedition.'"); *Van Heel v. GCA Educ. Servs., Inc.*, No. 2:20-CV-01505-AB-JEM, 2020 WL 6541989, at *4 (C.D. Cal. Sept. 30, 2020) ("[T]he Court  reminds Plaintiff that he cannot use discovery as a fishing expedition to find facts that may give credence to an unartfully pled complaint.").

## II.   Discussion

Plaintiff "seeks limited discovery to prove that the Home State Exception applies, and to investigate Defendant's unsupported assertion that the amount in controversy is met." *See* Discovery Mot. at 2.  Specifically, Plaintiff moves for discovery to determine "residency / citizenship" via "GE's own records including, *inter alia*, purchase receipts,

customer contact and address lists, and vendor records." *Id.* Plaintiff notes that Defendant "has already suggested it can provide certain sales information for review" in order to determine the amount in controversy. *Id.*

Defendant contends that it does not regularly collect the information sought by Plaintiff. Defendant argues that it "is a large, commercial farming operation that grows, harvests, and sells carrots and other produce to distributors, wholesalers, and retailers," and that, with "very limited exceptions," it generally "does not know the specific identify of end consumers who have purchased its products." Discovery Opp'n at 2. "Plaintiff's present request for jurisdictional discovery is a fishing expedition of the highest order and should be summarily denied," in Defendant's view. *Id.*

The Court finds that Defendant has met its burden of showing that CAFA's minimal diversity and amount-in-controversy requirements for federal jurisdiction are satisfied. A more satisfactory showing on these issues is not necessary. *See Butcher's Union Loc. No. 498, United Food & Com. Workers*, 788 F.2d at 540. Accordingly, the only remaining question is whether this Court should allow jurisdictional discovery to determine whether an exception applies to this Court's jurisdiction under CAFA.

Here, the Court finds that jurisdictional discovery related to CAFA's exceptions to federal jurisdiction is inappropriate. First, granting jurisdictional discovery here would almost certainly be futile. Defendant is a produce wholesaler and generally does not collect information about end consumers. Defendant has submitted evidence that, with some exceptions, it lacks the type of "customer lists" or "purchase receipts" sought by Plaintiff. *See* Declaration of Katie Diesl in Support of Defendant Grimmway Enterprises, Inc.'s Opposition to Plaintiff's Motion for Jurisdictional Discovery ("Diesl Decl. Discovery," ECF No. 17-1) ¶¶ 3–7.[5] Plaintiff's assumption that Defendant possesses jurisdictionally

---

[5] Plaintiff also objects to the cited portion of Ms. Diesl's Declaration in Support of Defendant Grimmway Enterprises, Inc.'s Opposition to Plaintiff's Motion for Jurisdictional Discovery. *See* ECF 21-2. The objections are made on the basis of lack of foundation, hearsay, improper opinion, and the best evidence rule. *Id.* The best evidence rule is simply inapplicable, as the declaration is not a copy of an original document. *United States v. Diaz-Lopez*, 625 F.3d 1198, 1201 (9th Cir. 2010). Moreover, the hearsay

relevant facts, on the other hand, is "based on little more than a hunch." *Boschetto*, 539 F.3d at 1020.  Moreover, Plaintiff's proposed discovery requests largely focus on contact information for "California purchasers." *See* Discovery Mot. at 5.  As has been established, however, Plaintiff's putative class definition captures consumers nationwide. *Supra* pp. 15–17.  Limiting discovery requests to "California purchasers" would necessarily exclude information pertaining to a significant portion of the proposed class.

Even if Defendant regularly collected such information, Plaintiff has not explained how consumer contact information—such as addresses and phone numbers—could establish the citizenship of putative class members.  Citizenship is established by a person's domicile, and "[a] person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A residential address, therefore, is generally insufficient to show domicile, as it usually is not evidence of a person's intention to remain or return. *King v. Great Am. Chicken Corp, Inc.*, 903 F.3d 875, 879 (9th Cir. 2018) ("A person's state of citizenship is established by domicile, not simply residence, and a residential address in California does not guarantee that the person's legal domicile was in California.").  And in this era of mobile phones, the area code of a person's cellular telephone number, unlike a landline, need not, and often does not, match the area code of their residence—which, again, is a distinct inquiry from domicile, anyway.  The Court acknowledges that Defendant has obtained selections of consumer contact information through inquiries and product feedback, but such information does not necessarily imply that the communicant purchased Defendant's products, nor would it offer sufficient evidence to establish

---

objection is meritless, as no out-of-court statements are being admitted for their truth. *See* Fed. R. Evid. 802.  Next, the improper opinion objection is similarly inapposite, as Ms. Diesl is not providing an opinion in her declaration; she is attesting to factual matters. *See* Fed. R. Evid. 701.  Finally, the Court has already inferred on the basis of Ms. Diesl's job title that she possesses personal knowledge of the facts to which she has attested. *Supra* p. 16 n.5.  Accordingly, Plaintiff's objections to this portion of Ms. Diesl's declaration are **OVERRULED**.  To the extent the Court does not rely on evidence to which an evidentiary objection was raised, the Court **OVERRULES** the objections as moot.

citizenship.  Likewise, Plaintiff's request for the "contact information of all entrants to the 'Grimmway Farms Social Giveaway'" likely could not establish citizenship or that the entrant purchased Defendant's products within the relevant timeframe.  Defendant notes that in 2021 it managed a third-party call center that collected consumer contact information in relation to a product recall.  *See* Diesl Decl. Discovery ¶ 4.  The call center, however, collected less than 800 responses.  *Id.*  Even if the Court were to assume that the contact information collected by the call center constituted sufficient proof to establish citizenship (which it does not), such a minute sampling would be weak evidence of the composition of a nationwide class of tens of thousands of putative members who purchased Defendant's products over a period of four years.

Second, the discovery sought by Plaintiff appears to be exactly the type of jurisdictional discovery that Congress hoped to avoid with CAFA.  The Senate Committee on the Judiciary explicitly stated that "it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members . . . , in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified."  S. REP. NO. 109-14, at 44 (2005).  The Committee also "caution[ed] that . . . jurisdictional determinations should be made largely on the basis of readily available information."  *Id.*  Plaintiff has failed to convince the Court that this case presents unique circumstances such that the Court should disregard Congress's stated intent to encourage federal jurisdiction under CAFA and spare defendants the burden of producing information for large groups of putative class members.

Finally, Plaintiff has failed to establish that a denial of jurisdictional discovery will result in prejudice.  Plaintiff does not argue, nor does she provide any evidence, that there is a reasonable probability that jurisdictional discovery would result in the production of facts establishing that two-thirds of the putative class are California citizens.  Here, granting jurisdictional discovery would likely have no effect on this Court's exercise of jurisdiction, as it would produce few, if any, jurisdictionally relevant facts.

/ / /

**III.    Conclusion**

Plaintiff's proposed discovery would not yield jurisdictionally relevant information and would conflict with congressional intent.  Consequently, the Court **DENIES** Plaintiff's Motion for Jurisdictional Discovery (ECF No. 8-1).

<b>CONCLUSION</b>

In light of the foregoing, the Court **DENIES** Plaintiff's Motion for Leave to Amend the Operative Complaint (ECF No. 9), **DENIES** Plaintiff's Motion to Remand to State Court (ECF No. 7), and **DENIES** Plaintiff's Motion for Jurisdictional Discovery (ECF No. 8-1).

**IT IS SO ORDERED.**

Dated:  May 9, 2023

Hon. Janis L. Sammartino
United States District Judge

22-CV-2038 JLS (DDL)