UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HICKS, an Individual on behalf of herself and all others similarly situated and the general public,<br><br>                                   Plaintiff,<br><br>v.<br><br>GRIMMWAY ENTERPRISES, INC., a Corporation with Headquarters in California; and DOES 1–100, inclusive,<br><br>                                   Defendants. | Case No.:  22-CV-2038 JLS (DDL)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>(ECF No. 3) |

Presently before the Court is Defendant Grimmway Enterprises, Inc.'s Motion to Strike the First, Second, and Third Causes of Action in Plaintiff's First Amended Complaint, and For Attorneys' Fees, Pursuant to Cal. Code Civ. P. § 425.16 ("Mot.," ECF No. 3).  Plaintiff Elizabeth Hicks filed an Opposition to the Motion ("Opp'n," ECF No. 11), and Defendant filed a Reply in support thereof ("Reply," ECF No. 13).  Having considered the Parties' arguments and the law, the Court **DENIES** Defendant's Motion.

/ / /

/ / /

# BACKGROUND

In this putative class action, Plaintiff alleges that Defendant, a California agricultural corporation, misrepresented the environmental impact of its farming practices through its advertising and "Inaugural Report on Environmental, Social and Governance Actions" ("ESG Report").  *See* First Amended Complaint ("FAC," ECF No. 1-8) ¶¶ 1–4, 19–26. Specifically, Plaintiff alleges that Defendant's statements about "regenerative farming"; its Environmental, Social, and Governance ("ESG") commitments; and "preserving natural resources" were "false, deceptive, and misleading."  *Id.* ¶¶ 15–16.  According to Plaintiff, Defendant's "method of growing its goods is causing severe harm to the ecosystem, and to its neighbors and communities."  *Id.* ¶ 3.

Plaintiff purports to represent a class of consumers who "would not have purchased (or would not have paid a premium [for])" Defendant's products had they known of Defendant's allegedly misleading statements.  *Id.* ¶ 16.  The FAC asserts three causes of action: (1) false advertising in violation of California Business & Professions Code §§ 17500 *et seq.*, FAC ¶¶ 43–48; (2) "unlawful, unfair, or fraudulent" business practices in violation of California Business & Professions Code §§ 17200 *et seq.*, FAC ¶¶ 49–60; and (3) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, FAC ¶¶ 61–69.

Plaintiff initiated this putative class action by filing a complaint in the Superior Court of San Diego County on September 29, 2022.  ECF No. 1-3.  Plaintiff filed the FAC in Superior Court on November 22, 2022.  *See* FAC.  Defendant removed the case to this Court on December 22, 2022.  *See* Notice of Removal ("Not. of Removal," ECF No. 1). On December 23, 2022, Defendant filed the instant Motion, arguing that "Plaintiff's lawsuit should be dismissed under California's anti-SLAPP framework."  Memorandum of Points and Authorities in Support of Defendant's Motion to Strike ("Mem.," ECF No. 3-1) at 7.[1]

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

## DEFENDANT'S MOTION TO STRIKE

Defendant argues that Plaintiff's three causes of action should be dismissed under California's anti-SLAPP statute because "(a) [they are] impermissibly predicated on Defendant Grimmway's exercise of its free speech rights (namely, political advocacy and statements of public interest), and (b) Plaintiff will fail to establish a probability of prevailing on the merits."  Mem. at 7.  Plaintiff counters that "all of the language at issue is 'commercial speech,'" which "does not receive [a]nti-SLAPP protections."  Opp'n at 8–9.

## I.    Legal Standard

Pursuant to California's Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, "a party may file a motion to strike a cause of action against it if the complaint 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'"  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citing Cal. Civ. Proc. Code § 425.16(b)(1)).  An "act in furtherance of a person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

/ / /

1    "A court considering a motion to strike under the anti-SLAPP statute must engage
2    in a two-part inquiry." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir.
3    2003).  First, the defendant must make an initial prima facie showing "that the challenged
4    cause of action is one arising from protected activity." *Navellier v. Sletten*, 52 P.3d 703,
5    708 (2002).  "A defendant meets this burden by demonstrating that the act underlying the
6    plaintiff's cause fits one of the categories spelled out in section 425.15, subdivision (e)."
7    *Id.* (quoting *Braun v. Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 61 (Ct. App. 1997))
8    (internal quotation marks omitted).  "The defendant need not show that the plaintiff's suit
9    was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions
10   are ultimately beside the point.'" *Id.* (citing *Equilon Enters., LLC v. Consumer Cause,*
11   *Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002)); *see also Dible v. Haight Ashbury Free Clinics, Inc.*,
12   170 Cal. App. 4th 843, 851 (2009) ("If the actionable communication fits within the
13   definition contained in the statute, the motive of the communicator does not matter."
14   (citation omitted)).  "Similarly, the defendant bringing a motion to strike need not show
15   that any speech was actually chilled." *Vess*, 317 F.3d at 1110 (citing *City of Cotati v.*
16   *Cashman*, 29 Cal. 4th 69, 75–76 (Cal. 2002)).

17       In federal court, the standard the court applies in the second step depends on whether
18   the anti-SLAPP motion is founded on purely legal arguments or raises factual challenges
19   to the complaint.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890
20   F.3d 828, 834 (9th Cir. 2018), *concurrence amended*, 897 F.3d 1224 (9th Cir. 2018).
21   "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim,
22   a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and
23   consider whether a claim is properly stated," but "when an anti-SLAPP motion to strike
24   challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56
25   standard will apply." *Id.*; *see also CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136,
26   1143 (9th Cir. 2022).
27   / / /
28   / / /

California Code of Civil Procedure § 425.17 lays out several exemptions from anti-SLAPP liability.  Among them is § 425.17(c), the "commercial speech exemption."  *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009).  Under this provision, causes of action arising from commercial speech are exempt from the anti-SLAPP law when:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
>
> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
>
> (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>
> (4) the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*See Simpson Strong–Tie Co. v. Gore*, 230 P.3d 1117, 1129 (2010).

## II.   Discussion

The Court will first analyze whether Defendant's ESG Report is subject to the commercial speech exemption by addressing each of the four *Simpson Strong–Tie Co.* factors listed above.  *Supra.*  "If it is, the anti-SLAPP analysis ends.  If not, the Court continues with the § 425.16 analysis."  *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1037 (S.D. Cal. 2011).

First, it is undisputed that Defendant is an entity primarily engaged in the business of selling or leasing goods.  *See* Mem. at 8 ("Defendant Grimmway is a grower and shipper of carrots and organic produce . . . .").

/ / /

/ / /

5

Second, the ESG Report contains several representations of fact about Defendant's business operations and goods.  The ESG Report boasts of Defendant's "Environmental Stewardship," ECF No. 3-4 at 9; "Leadership in Organics," *id.* at 11; low-emission farm equipment, *id.* at 19; "Responsible Farming Practices," *id.* at 26; and "Quality Assurance and Food Safety," *id.* at 35, among other aspects of its business operations and goods.  One section of the ESG Report is pointedly titled "Operations" and describes Defendant's efforts to "increase productivity, food safety and quality, and accountability." *Id.* at 31.  Accordingly, the Court finds that the second *Simpson Strong–Tie Co.* factor is present here.

Third, the Court finds that the ESG Report was created, at least in part, to promote Defendant's goods or services.  The ESG Report repeatedly spotlights the safety and quality of Defendant's goods.  "Consumers can buy our products with confidence that they meet the industry's most rigorous safety standards," reads the ESG Report. *Id.* at 35.  "Food safety and quality assurance are not simply check boxes," the ESG Report continues. *Id.*  "They preface every aspect of our multi-state operations from seed to store, encompassing planting, growing, harvesting, processing, packaging, and transportation of our products." *Id.*  The ESG Report also highlights Defendant's "responsiveness to customers," *id.*, as well as its certifications and best practices, *id.* at 36.  Elsewhere, Defendant discusses steps it has taken to achieve its "mission to provide the world with high-quality, healthy produce." *Id.* at 29.  Taken in conjunction, the representations in the ESG Report advertise Defendant's produce as fresh, safe, healthy, sustainable, and grown by a reliable and ethically responsible business organization.

The Court acknowledges that significant sections of the ESG Report discuss topics not strictly tied to Defendant's goods and services.  For example, the ESG Report also features information pertaining to "Employee Health and Wellness," *id.* at 37; "Diversity, Equity, and Inclusion," *id.* at 41; and various philanthropic initiatives, *id.* at 43–48.  The overall message of the ESG Report, however, is that Defendant is an ethically responsible grower and seller of high-quality food products.  As such, the ESG Report promotes

/ / /

6

Defendant's products and its brand more generally. Consequently, the Court finds that the ESG Report satisfies the third *Simpson Strong–Tie Co.* factor.

Finally, the ESG Report's audience consists of actual and potential customers, as well as organizations likely to influence potential customers. Defendant argues that the ESG Report was merely directed to "internal and external stakeholders like employees, policymakers, and advocacy groups." Mem. at 20. The ESG Report itself, however, defines the term "stakeholders" as including not only the groups that Defendant listed, but also "Consumers" and "Customers." ECF No. 3-4 at 53. Moreover, the ESG Report was distributed to "Chambers of Commerce," "various trade associations," and "the media," all of which are likely to influence potential customers. Declaration of Dana Brennan in Support of Defendant Grimmway Enterprises, Inc.'s Motion to Strike ("Brennan Decl.," ECF No. 3-2) ¶ 11.[2]

The ESG Report was also published on Defendant's website, where direct customers and end-consumers could access it. *Id.* ¶ 12.[3] According to Dana Brennan, the Vice President for External Affairs & Corporate Responsibility for Defendant, the ESG Report was only published online so that Defendant could be eligible for a global corporate governance award and "was not put online for any sales-related purpose and was not directed to end-consumers." *Id.* Plaintiff, however, has submitted evidence that links to the ESG Report were widely circulated on Defendant's social media accounts. *See* ECF

---

[2] Plaintiff objects to this paragraph of Ms. Brennan's Declaration on the basis of lack of foundation. "Personal knowledge may be inferred from declarations that concern areas within the declarant's job responsibilities." *Silva v. AvalonBay Communities, Inc.*, No. LACV1504157JAKPLAX, 2015 WL 11422302, at *4 n.1 (C.D. Cal. Oct. 8, 2015). According to Ms. Brennan's Declaration, she is the Vice President for External Affairs & Corporate Responsibility for Defendant. Brennan Decl. ¶ 1. Such a showing is sufficient for the Court to infer that Ms. Brennan possesses relevant personal knowledge of the parties to whom the ESG Report was distributed. Consequently, the Court **OVERRULES** Plaintiff's objection.

[3] Again, Plaintiff objects to this paragraph of Ms. Brennan's Declaration on the basis of lack of foundation, as well as speculation. The Court **OVERRULES** the objections for the aforementioned reasons.

No. 11-9 at 2–3; ECF No. 11-11 at 7–22; ECF No. 11-12 at 2–17.[4]  While Defendant may have initially published the ESG Report to its website with the global corporate governance award in mind, the subsequent promotion of the ESG Report to Defendant's social media followers supports the conclusion that the ESG Report was used to target Defendant's actual and potential customers.

Defendant argues that the commercial speech exemption does not apply here because the "Challenged Statements . . . were not 'made for the purpose of obtaining approval for, promoting, or securing sales' of Grimmway's products."  Mem. at 20 (quoting Cal. Code. Civ. P. § 425.17(c)).  Defendant's attempt to limit the commercial speech exemption to the statements specifically referred to in Plaintiff's Complaint fails.  First, Plaintiff's FAC cites specific statements contained within the ESG Report as *examples* of alleged false advertising, *see* FAC ¶ 2, 4; the statements identified in the Complaint do not represent all challenged representations.  Moreover, when analyzing whether a given communication represents commercial speech, this Court and other federal and state courts have looked to the communication as a whole in order to give context to specifically challenged statements; viewing challenged statements in isolation would render toothless the *Simpson Strong–Tie Co.* factors.  *See e.g.*, *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1078 (S.D. Cal. 2021) (applying anti-SLAPP two-part inquiry to entire news articles and podcasts); *Weiland Sliding Doors & Windows, Inc.*, 814 F. Supp. 2d at 1037 (concluding press release, as a whole, constituted commercial speech); *Dossett v. Ho-Chunk, Inc.*, 472

---

[4] The Court finds that Defendant's social media posts were incorporated into the FAC by reference.  "A court may consider documents external to the pleadings in a motion to dismiss under the incorporation by reference doctrine where the contents of the documents are alleged in the complaint and neither party questions the authenticity of the documents."  *Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*, 190 F. Supp. 3d 976, 983–84 (E.D. Cal. 2016) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)); *see also Tensor L. P.C. v. Rubin*, No. 2:18-CV-01490-SVW-SK, 2019 WL 3249595, at *5 (C.D. Cal. Apr. 10, 2019) (applying incorporation by reference doctrine in anti-SLAPP case); *Eliott v. Lions Gate Ent. Corp.*, No. 221CV08206SSSDFMX, 2022 WL 17408662, at *2 (C.D. Cal. Nov. 8, 2022) (same).  Here, Plaintiff's FAC refers to statements made in Defendant's "online advertising" and "marketing tools," which would include Defendant's social media posts.  Moreover, Defendant has not objected to the authenticity of the social media posts.

F. Supp. 3d 900, 908 (D. Or. 2020) (analyzing full news articles in the context of anti-SLAPP motion); *Simpson Strong-Tie Co.*, 230 P.3d at 1129 (concluding advertisement, as a whole, did not constitute commercial speech).

Defendant also emphasizes the fact that the ESG Report discusses various issues of public interest and was distributed to legislative officials. Mem. at 15–19. Communications may, however, "constitute commercial speech notwithstanding the fact that they contain discussions of important public issues." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67–68 (1983). Moreover, the distribution of the ESG Report to legislative officials does not negate the ESG Report's commercial nature.

In sum, all four *Simpson Strong–Tie Co.* factors are present here, and the Court finds that the ESG Report constitutes commercial speech. Therefore, the ESG Report is exempt from anti-SLAPP protections pursuant to California Code of Civil Procedure § 425.17(c).

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to Strike the First, Second, and Third Causes of Action in Plaintiff's First Amended Complaint, and For Attorneys' Fees, Pursuant to Cal. Code Civ. P. § 425.16 ("Mot.," ECF No. 3).[5]

**IT IS SO ORDERED.**

Dated:  June 5, 2023

Hon. Janis L. Sammartino
United States District Judge

---

[5] In support of the Motion to Strike, Defendant requests that the Court take judicial notice of a complaint that Plaintiff filed against WM. Bolthouse Farms, Inc. in the Superior Court of California for San Diego County, in Case No. 37-2022-00035907-CU-BT-CTL. *See* Defendant's Request for Judicial Notice in Support of Its Motion to Strike (ECF No. 3-6). As the Court has ruled on the Motion to Strike without reference to the proposed document, the Court **DENIES AS MOOT** Defendant's Request for Judicial Notice.

Additionally, Plaintiff filed an Objection to Defendant's "Supplemental" Declaration Providing New Evidence on Reply. *See* ECF No 15. As the Court did not rely on the challenged declaration in ruling on the Motion to Strike, Plaintiff's Objection is **DENIED AS MOOT**.

9